SWANN (COMMON COUNCIL v.). See Case No. 3,066.

SWANN (RIGGS v.). See Case No. 11,831.

———

## Case No. 13,674.

### SWANN v. RINGGOLD.

[4 Cranch. C. C. 238.] [1]

Circuit Court, District of Columbia. Oct. Term, 1832.

MARSHAL—POUNDAGE—DISCHARGE WITHOUT PAYMENT.

The marshal of the District of Columbia is not entitled to poundage, upon the arrest of a debtor on a ca. sa. in Alexandria county, who has been discharged from such arrest, by order of the plaintiff, without payment.

[Cited in The Clintonia. 11 Fed. 742.]

[This was an action by W. T. Swann's administratrix against Tench Ringgold, marshal of the District of Columbia.]

At April term, 1829, a rule was obtained by William T. Swann's administratrix, on the marshal, to show cause, on the 9th of May following, why he should not refund to her the sum of $47.53, received by him, from her, for commissions included in a prison-bounds bond, by him taken under a writ of ca. sa., in her favor, against G. A. Brown; or so much of the said sum of $47.53, as exceeds the fees allowed by law for the service of the said writ, and for taking the said bond, upon the following case agreed. "On the 13th of April, 1826, William T. Swann's administratrix issued a ca. sa. against G. A. Brown, returnable on the fourth Monday in June following, which was served on Brown, who gave a prison-bounds bond to the marshal." Before the expiration of the term limited in the prison-bounds bond, the plaintiff gave the marshal the following written order: "The marshal will discharge G. A. Brown, and deliver to him his bounds-bond, as he has made a settlement of his case with me." That the settlement alluded to in the order to the marshal, consisted in Mr. Brown's allowing the administratrix to set off a judgment which he had obtained against her for $450.37, with interest from the 27th of April, 1824, and $11.22, costs against the judgment which she had obtained against him for a larger sum; and to secure the balance due to her, he gave her a deed of trust on some lands in Virginia, which security she still holds; but the lands are wholly insufficient to satisfy the balance due to her; and that she has received no benefit from the arrangement, except the discharge of Mr. Brown's judgment against her. That, in making the arrangement, she was

[1] [Reported by Hon. William Cranch, Chief Judge.]

not deceived as to the value of the lands. The original judgment of W. T. Swann's Administratrix v. Brown, was for $3,316.66, with 4 per cent. interest from the 1st of April, 1817, and costs, to be released except costs, by payment of $1,525.76, with interest thereon from the 16th of October, 1820, at 4 per cent. per annum, till paid. The condition of the prison-bounds bond was, that the defendant would not depart, &c. The marshal calculated the amount due upon the ca. sa., as follows:

| | |
|---|---:|
| Debt | $1,525 76 |
| Interest | 337 26 |
| Costs | 13 86 |
| Marshal's fees | 47 53 |
| | $1,924 41 |

The case, thus stated, was argued by Mr. Hewitt, for the marshal, and by Mr. Taylor, for Mrs. Swann, who contended that the marshal was not entitled to a commission of any kind, upon the amount due upon the ca. sa. at the time of the service of it upon Mr. Brown.

The COURT, at a previous term, having adjourned the case, for consideration, and requested information as to the practice in Virginia, sundry letters from gentlemen of the bar, and from sheriffs and clerks in Virginia, were laid before the court, from which it appears that there is no settled practice in that state, upon such a case as the present. It seems, however, to be the practice for the sheriff to receive his full commissions, if the plaintiff receives his whole debt, and discharges the defendant from custody, on the ca. sa. And to receive no commissions if the defendant be discharged under the insolvent law, except upon the sale of the effects which may be surrendered by the debtor.

CRANCH, Chief Judge. By the act of congress of the 3d of March, 1807 (2 Stat. 430), the marshal of the District of Columbia is to receive, for the service of any writ, 50 cents only for each person on whom served; and for taking any bond required by law, 50 cents only; and for such services as were not enumerated in that, or some other act of congress, he is to receive the like fees and compensation, if performed in Alexandria county, as by the laws of Virginia, in force on the first Monday of December, 1800, were allowed to a sheriff of a county, for the like services. By the act of congress of the 28th of February, 1799 (1 Stat. 624), the marshal was allowed, "for sales of vessels, or other property, and for receiving and paying the money, for any sum under $500, 2½ per cent.; for any larger sum, 1 and ¼ per cent. upon the excess." No other commission or poundage was expressly given by any other act of congress. It is, however, by the same act provided, that, "for all other services not therein enumerated, (except as should be thereafter provided,) such fees and compensations as are allowed in the supreme court

in the state where such services are rendered." But a commission or poundage fee upon a ca. sa., whether the money was paid to the plaintiff or not, was not expressly given. The reference to the fees and compensation allowed in the state courts, is only to fees and compensation for services not enumerated in some act of congress. The service of arresting the defendant, and of taking the bond, are enumerated in the act of 1807, and the services of committing him to prison, and of discharging him, are enumerated in the act of 1799. The services, therefore, of arresting and committing the defendant, taking the prison-bounds bond, and discharging him, are all enumerated services. What service, then, remains to be performed by a sheriff, under a ca. sa., the compensation for which is to be ascertained by reference to the laws of Virginia? Nothing but the fee of 21 cents a day for keeping and providing for a debtor in jail. The only commission or poundage given by the act of Virginia of 1792, is for a service which cannot be performed under a ca. sa., namely: "For proceeding to sell on any execution, if the property be actually sold, or the debt paid, the commission of 5 per centum on the first three hundred dollars, or ten thousand pounds of tobacco, and two per centum on all sums above that; and one half such commission where he shall have proceeded to sale, and the defendant shall have replevied; and no other commission, fee, or reward, shall be allowed upon any execution, except for the expense of removing and keeping the property taken." The act of the 10th of December, 1793, § 33, (page 302,) gives the same commission in precisely the same words, with the same denial of all other commission, fee, or reward upon "any execution."

It is evident, from the purport of these sections, that they refer only to executions upon which property may be taken and sold, and not to a writ of ca. sa., upon which property cannot be taken. So, also, in the 12th section of the act of December 10, 1793, respecting executions, it is enacted, that, "on all executions," "the sheriff, or other officer, having published notice of the time and place of sale," &c., "at least ten days before such sale, shall proceed to sell by auction the goods or chattels so taken," &c. And the 13th section provides for taking a forthcoming bond, "reciting the service of such execution, and the amount of money or tobacco due thereon, and with condition to have the goods forthcoming at the day of sale," &c. By the 22d section of the same act, it is provided, that if goods taken in execution will not sell for three fourths of their value, the debtor may give a bond, with surety, to pay the amount within twelve months. A similar provision had been made by the act of 1787, c. 7, § 3. These bonds are called replevy bonds; and, upon giving them, the property is said to be replevied. This provi-

sion, however, was repealed by the act of December 17, 1795, p. 341. But it explains the term "replevied," in the act of 1792. By the 32d section of the act of December 10, 1793, also, it is enacted, that "when the sheriff shall, under any execution, have fixed the time and place for the sale of the property taken under such execution," &c. In all these instances, the legislature, although adopting the terms "any execution," or "all executions," seem to have used them only in reference to writs of fieri facias; if so, they give no authority to the sheriff to take a commission or poundage upon a ca. sa.; yet it is admitted that the practice of the sheriff is to take a commission if he arrest the defendant on a ca. sa., and the plaintiff receives his debt. By what law is this practice justified? By the 29th section of the act of December 10, 1793, the debtor, taken on a ca. sa., may tender property, in discharge of his person, and the sheriff is to sell the property as if taken on a fieri facias. Under this section, it is understood to be the practice for the debtor who has thus discharged his body by tendering goods, to give a forthcoming bond, under the 13th section of the same act, in the same manner as if the goods had been taken under a writ of fieri facias; which bond recites the service of the execution, and the amount due thereon, including the sheriff's commission, in the same manner as in a bond for the forthcoming of goods taken under a fieri facias, according to the 11th section of the act of December 24, 1794, concerning executions (page 326,) which enacts, "that every sheriff or coroner may include his commissions in forthcoming and replevy bonds, taken on any writ of execution; but he shall not demand or receive such commissions on forthcoming bonds unless the same shall be forfeited." The condition of the bond, required by the act, is, simply that the goods shall be forthcoming on the day of sale. But, it seems, by the language of the section, that the bond may be discharged by the payment of the debt and costs mentioned in the execution; and such was also the purport of the act of 1726, § 17. If the property be forthcoming at the day, the sheriff proceeds to sell, and is, then, only entitled to a commission on the amount of sales. The recital of the commission in the bond is then of no avail, because the bond is not forfeited. But if the bond be forfeited, the judgment upon it includes the commission recited in the bond. But, in the present case, no forthcoming bond was given. The debtor was committed and discharged by order of the creditor, after giving a prisonbounds bond, which, however, does not alter the law of the case, for the bond was only a substitute for the walls of the prison.

There is no statute of Virginia, in force in this district, or any act of congress which expressly gives the marshal a right to a commission upon service of a ca. sa. in any case upon a judgment rendered in Alexan-

dria county. How, then, did the practice originate, which allows the marshal a commission upon service of a ca. sa., if the debt be paid? At common law the sheriff was not entitled to any fee for doing his duty; but was to be paid by the king. Walden v. Vessey, Latch, 17, Palmer, 399, Poph. 173; Woodgate v. Knatchbull, 2 Term R. 148. But it appears by the statute of 3 Edw. I., c. 26, which prohibits the sheriff from taking any reward for doing his office, that sheriffs had demanded rewards from individuals; and it appears from 29 Eliz. c. 4, which limits their fees, and which is entitled "An act to prevent extortion in sheriffs," &c., "in cases of execution," that they continued to demand a reward, notwithstanding the prohibition in the statute of Edward. By the statute of 29 Eliz. c. 4, it is enacted, "that it shall not be lawful," "for any sheriff," &c., "by reason or color of their office, to have, receive, or take of any person or persons whatsoever, for the serving and executing of any extent or execution, upon the body, lands, goods, or chattels of any person, more or other consideration of recompense, than in this present act is, and shall be, limited and appointed, which shall be lawful to be had, received, and taken, that is to say 12d. for every 20s. where the sum exceedeth not £100, and 6d. of and for every 20s. being over and above the said £100, that he or they shall so levy and extend and deliver in execution, or take the body in execution for, by virtue or force of any such extent or execution." The statute of 23 Hen VI. c. 9, gives the sheriff a fee of 20d. for an arrest, and 4d. for the bailiff, and 4d. for the gaoler, if committed. These statutes were in force in England at the time of the first settlement of Virginia; they ought, therefore, to be borne in mind in considering the legislation of that state upon this subject. It was early decided under the statute of Elizabeth, that the sheriff was entitled to his poundage upon a ca. sa. as soon as he had arrested and committed the defendant, and could recover it of the plaintiff in an action of debt. This was well understood to be the law in England when the legislature of Virginia, in 1642, passed their law for ascertaining the fees of sheriffs and other officers; by which it was enacted, "that the sheriff's fees shall be as followeth: For an arrest, 10 lbs. tobacco. For bond-taking, 10 lbs. tobacco. Going to prison, 10 lbs. tobacco. For serving an execution under 100 lbs. tobacco, 10 lbs. tobacco. If above 100 to 500 lbs. tobacco, 20 lbs. tobacco. If above 500 to 1,000 lbs. tobacco, 40 lbs. tobacco. If unto 2,000 lbs. tobacco, 60 lbs. tobacco. If above 2,000, then 10 lbs. upon every 1,000. For attachment half as much as for execution and accordingly." These fees were reënacted, in nearly the same words, in 1657, 1661, and 1671. By the act of April, 1718 (4 Hen. St. 72), the sheriff's fees were: "For arrest, bond, and return, 30 lbs. tobacco. For putting into prison and releasement, 20 lbs. tobacco. For serving executions for any debt due in tobacco, 5 per cent. for the first 1,000l. and 2 per cent. for all above 1,000l. For serving attachment on goods where they shall be appraised and delivered to the plaintiffs, the same fees as on executions; but when not appraised, 15 lbs. tobacco. For serving attachment upon the body and bond, 20 lbs. tobacco. For keeping and providing for a person in gaol, each day, 10 lbs. tobacco." By the act of 1732 (4 Hen. St. 348), the sheriff's fee for arrest, &c., is the same as in the former laws; but the fee for serving executions is thus expressed: "For serving an execution for any debt due in tobacco, 5 per cent. for the first 1,000 pounds, and 2 per cent. for all above 1,000 pounds. Due in money 5 per cent. for the first 100 pounds, and 2 per cent. for all above 100 pounds." These fees were reënacted, in nearly the same words, by the acts of 1734, 1735, and 1745, and so continued until the year 1788.

It is worthy of observation, that the editor of the edition of the Virginia Laws, published in 1769, in a note to that part of the fee-bill of 1745, which gives the poundage fee upon the service of an execution, refers to the statute of 1764, c. 6, § 8, which prohibits sheriffs from taking commissions from the plaintiff upon the debt due from a debtor committed upon a ca. sa. and discharged under the insolvent act; thus showing the opinion of the editor that the act of 1745 authorized the sheriff to receive his commission or poundage upon the service of a ca. sa. The 8th section of the act referred to (1764, c. 6, § 8) is as follows: "And whereas some doubts and disputes have arisen, whether the sheriffs are entitled to any and what commissions upon the amount of debts due from persons either committed to their custody in court, or taken upon executions, and who have afterwards taken the benefit of the act of assembly made for the relief of insolvent debtors, and been discharged as such, or who, having remained in prison twenty days, are discharged by the sheriff for want of security for the prison fees; for settling and putting a stop to any further disputes thereon; be it further enacted," &c., "that from and after the passing of this act, it shall not be lawful for the sheriffs, or other officers, to demand, receive, or take, of or from any creditor, or suitor, at whose suit or instance any debtor shall be committed to his custody, by the court, or shall be taken in execution and shall afterwards be discharged by taking the oath of an insolvent debtor, or for want of security for the prison fees, any commissions upon the amount of the debt for which such insolvent was in custody as aforesaid, except on the amount of the effects mentioned in the schedule delivered in by such debtor; nor any other fees or perquisites, than such as are already allowed by law upon the commitment, releasement, and for the maintenance of such debtor." The

9th section of the same act is also important; it is as follows: "And whereas it is represented that some sheriffs have demanded commissions upon the amount of the penalties of bonds or other writings on which judgments have been obtained and executions issued, which is altogether unreasonable and unjust; be it further enacted, that it shall not hereafter be lawful for the sheriffs, or other officers, to demand, receive, or take any such commissions upon the penalties mentioned or expressed in executions delivered to them to be executed; but upon the sum, only, by the payment of which such execution is directed to be discharged, from the persons against whom such executions shall be issued; any former custom or usage to the contrary thereof in anywise notwithstanding." These statutes seem clearly to recognize the right of the sheriff, at that time, to receive poundage upon the service of a ca. sa. whether the debt be paid or not.

But in the year 1788, the language of the fee-bill is materially changed. Instead of giving poundage under the name of a fee for serving an execution, it gives "a commission for proceeding to sell on any execution if the property be actually sold, or the debt paid;" and one half of such commission, "where the sheriff shall have proceeded to sale and the defendant shall have replevied; and no other commission, fee, or reward shall be allowed upon any execution, except for the expense of removing and keeping the property taken." This change of language indicates a change of intention. The commission does not become due upon the service of the execution; but upon proceeding to sell, and upon an actual sale; or upon payment of the debt; or upon giving a replevy-bond; in which last case, only half of the commissions were allowed. The language seems to confine the commission to executions upon which property may be taken and sold; yet it is understood that the practice, under this act, has been to allow the commissions on a ca. sa. if the debt be paid. This construction has probably been grounded on the words, "or the debt be paid." If so, then the commissions on a ca. sa. should be limited to the case where the debt is paid, and could not be demanded of the plaintiff until the debt was paid. If the act gives the whole commission when the whole debt is paid, the equity of the act would give part of the commissions when part of the debt should be paid; that is, pro ratâ. When the sheriff receives the money he knows whether the debt, or what part of it is paid, and of course, what part of his commission is due. But when the plaintiff receives the money and orders the defendant to be discharged, the sheriff cannot know to what proportion of his commission he is entitled, and has a right to suppose that the whole debt is paid. Whether the release of the defendant is conclusive evidence as between the plaintiff and the sheriff, that the whole debt is paid, may be a question. It seems to me that it is not; but that it is primâ facie evidence, and throws the burden of proof upon the plaintiff to show what part of the debt, or that no part of the debt, was paid; and if he does this, the sheriff's commission, if any part of the debt was paid, will be in proportion thereto. In the present case, the plaintiff in the execution has shown that the debt was not paid at the time of ordering the marshal to discharge the debtor, and has not been paid since. It is admitted that she received no benefit from the arrangement made between her and the debtor, except in the discharge of a judgment which he had obtained against her; and that the security which she received and still holds, is wholly insufficient to satisfy the balance of her claim.

Upon the whole, we are of opinion that the marshal is not now entitled to any commission upon the ca. sa. stated in the case agreed, and ought to refund the $47.53, which he has received for commissions in that case.